Argued January 22, reversed February 9, rehearing denied March 16, 1915.

## FRENCH v. GOIN.

(146 Pac. 91; 146 Pac. 94.)

**Judgment—Equitable Relief—Mistake—Pleading.**

1.   In a wife's suit to remove a cloud on her title to land alleged to have been deeded to her by her husband, where the plaintiff claims that she joined in a partition suit between herself and the husband's heirs in ignorance of her legal rights, the complaint is insufficient if it fails to allege the mistake as having been mutual among the parties to the partition suit.

   [As to negligence as a bar to equitable relief from judgment, see note in 53 Am. St. Rep. 444.]

**Judgment—Equitable Relief—Pleading—Complaint—Mistake.**

2.   In a suit to remove a cloud on title to land alleged to have been deeded her by her husband, where the complaint does not allege that the plaintiff joined in a partition suit in ignorance of the existence of the old deed from her husband, such complaint alleges merely ignorance of her rights under the facts.

**Partition—Effect of Decree as to Title—Estoppel of Parties.**

3.   Under Section 756, and Sections 436, 440, 441, 444, 445, L. O. L, in partition a court of equity may adjudicate title, as well as possession; such statutes changing the common-law rule that a party to a partition suit is not estopped to question the title of any other party to the suit.

   [As to partition of property of decedents, see note in 119 Am. St. Rep. 586.]

**Judgment—Conclusiveness—Matters not Disputed.**

4.   Where, in a suit to remove a cloud on title alleged to have arisen from the decree in a partition suit, the plaintiff contends that

her coplaintiffs and the defendants in such suit did not dispute her allegation of title, leaving no issue upon which to base a binding partition decree, the contention is without merit.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by Leverna Hogan French against Hattie Goin and George R. Goin, her husband, William C. Hogan and Agnes Hogan, his wife, E. R. Hogan, Lillian Denison Jester and G. P. Jester, her husband.

The substance of the complaint is that prior to May 25, 1870, and up to the time of his death on September 24, 1905, the plaintiff was the wife of Thomas G. Hogan, who on the date first mentioned conveyed to her the west half of a certain donation land claim in Marion County by a deed duly recorded there on that date. Hogan died, leaving, besides his widow, the plaintiff, later intermarried with a man named French, two daughters, Hattie Goin and Lillian D. Jester, and two sons, William C. and E. R. Hogan. The complaint states that the decedent Hogan left two other tracts of realty described in that pleading. It is then averred, in substance: That on and about March 7, 1907, the plaintiff herein, Leverna Hogan French, being ignorant of the law and unaware of her rights in the property, sought the legal advice and assistance of a duly authorized, licensed and practicing attorney at law of the courts of the State of Oregon, and this plaintiff, together with each of the defendants, entrusted said duly authorized attorney to make investigation of the rights of the parties in the premises, and to procure a division of said property according to the rights of the parties; that under mistake of fact as to her rights in the premises, and acting upon a mis-

taken view of the law, not knowing or appreciating her rights in the said property included in the said deed from Thomas G. Hogan to her, this plaintiff permitted the said attorney to insert her name as plaintiff in the said partition suit brought on March 7, 1907, wherein she, together with her children, Hattie Goin, William and E. R. Hogan, and their spouses, are plaintiffs and her daughter Lillian and her husband are defendants, in which said complaint it is alleged, among other things, that the plaintiffs and defendants in said partition proceedings were the owners in fee simple and in possession of all of the above-described premises, and that the said Leverna Hogan was entitled to a life estate in half of the rents and profits of all of the above-described lands and premises. The history of the partition suit follows, whereby it appears that about March 13, 1907, an interlocutory decree was entered declaring the estates of the parties in the property to be as averred in the complaint. It is then said:

"That thereafter and on or about March 10, 1907, there was filed in said court, for record, a paper purporting to be a final decree confirming the referee's report and purporting to specify the right, title and interest of the parties to said partition suit in and to the property involved therein; that in said paper, purporting to be a final decree, it is asserted that the plaintiff, Leverna Hogan, have for her use during her lifetime the following described tract of land: [Giving a description of the same.] And was given no other interest in any of the above-described property, excepting such life estate. That, as a matter of fact and of law, there has been no final decree entered in said partition suit, and the same is still unsettled and pending."

The following averment also appears in the complaint:

75 Or.—17

"That all of said partition proceedings and all of the allegations and everything connected with the property, or affecting the property conveyed by the said deed of Thomas G. Hogan, were had and done, so far as this plaintiff is concerned, through a mistake of fact and law on her part, as to her legal right and interest in and to said property covered by said deed, and through this plaintiff's reliance upon the said duly authorized, licensed attorney who was also acting as the attorney and agent for each of the defendants herein, in said partition proceedings, and that this plaintiff at all times had and owned a fee-simple title to all of said property covered by said deed, and this plaintiff now owns the fee-simple title to said premises; that in said partition proceedings it was the agreement and understanding among this plaintiff and each of the defendants in this action that the said property was to be divided according to their legal interest in the property; and that the said defendants and each of them at that time knew that this plaintiff was entitled to such division of such property as would give this plaintiff absolute legal fee-simple title to the property covered in said deed."

Asserting herself to be in possession of the lands in question under a fee-simple title, the plaintiff states that the defendants claim some right, title and interest in the property without any right thereto, all of which constitutes a cloud upon her title. She prays for a decree setting aside the partition proceedings and quieting her title to the premises involved as against the defendants, and for other and further relief.

The effect of the denials in the answer is to challenge the conveyance of land by Thomas G. Hogan to the plaintiff and to traverse all her allegations respecting her alleged mistake and the invalidity of the partition proceedings. The defendants then allege the death of Thomas G. Hogan, claiming that he was the owner of 480 acres of land in Marion County of

which the land in controversy herein was a part. They aver that the decedent left his widow, the plaintiff, and their children, the daughters, Hattie and Lillian, and the sons, William C. and E. R., the defendants in this suit, as his only heirs. They narrate a history of the plaintiff taking out letters of administration upon her deceased husband's estate, making an inventory of all the lands mentioned, including that in dispute, as his property, winding up the affairs of the estate, effecting a final settlement upon that basis, and surrendering to the defendants here as heirs at law of Thomas G. Hogan, deceased, the possession of all the real property including that mentioned in her amended complaint, saving only her dower estate therein. In bar and likewise as an estoppel against the plaintiff, they further set up the history of the partition suit showing the present plaintiff's active participation therein as a plaintiff.

The reply is a virtual admission of the allegations of the answer, except that plaintiff maintains that she was mistaken about her rights in the premises when she commenced the partition suit. From a decree in favor of the plaintiff, the defendants appeal.

REVERSED.

For appellants there was a brief with oral arguments by *Mr. Alva O. Condit* and *Mr. George G. Bingham.*

For respondent there was a brief over the names of *Mr. Charles F. Saunders, Messrs. Abel & Burnett* and *Mr. John A. Carson,* with an oral argument by *Mr. Saunders.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The only evidence of the conveyance by her husband to the plaintiff of the land in dispute is an exemplification of page 139 of volume 12 of the Records of Marion County, disclosing the record of a quitclaim deed from Thomas G. Hogan to Leverna Hogan of the west half of claim No. 57, being parts of sections 5, 6, 7 and 8, in township 10 south, range 2 west, W. M., described also by metes and bounds, in consideration of the love and affection he entertained for his wife. The deed itself was not offered in evidence and no witness was produced who ever saw it. The plaintiff herself declared she had never heard, or, if she had, she had forgotten, about the deed until long after the conclusion of the partition suit. Under these circumstances, it was urged by the defendants that there was no evidence of the delivery of the deed so as to accomplish the change of title from the decedent to the plaintiff. We do not deem it necessary to decide this question, but pass to a consideration of the complaint and the effect to be given to the partition suit described therein.

1, 2. Referring to the allegations of the initial pleading here, we observe that it contains no statement that the mistake averred was mutual between the parties to that suit. The plaintiff asserts that she was "ignorant of the law and unaware of her rights in the property"; that she acted "upon a mistaken view of the law, not knowing or appreciating her rights in said property included in the deed from Thomas G. Hogan to her." She does not pretend that her children, the defendants, were mistaken; but, on the contrary, she asserts that:

"Each of them at that time knew that this plaintiff was entitled to such division of such property as would give this plaintiff absolute legal fee-simple title to the property covered in said deed."

It is hornbook law that a mistake must be mutual between adversary parties if a proceeding affecting them is to be set aside for that reason. The complaint lacks this essential authorizing the action of a court when called upon to overturn a judicial decree on the ground of mistake. The plaintiff does not directly aver that she was not aware of the existence of the deed. The legal effect of her complaint is that she was ignorant of her rights flowing from the facts involved. Ignorance of the law excuses no man, is an ancient maxim of jurisprudence.

It is not intimated in the complaint that anyone undertook to misrepresent a single fact to the plaintiff or to overreach or defraud her. The testimony shows her to be a woman of affairs who conducted the settlement of her husband's estate and other business with ordinary skill and intelligence. By her partition suit she clearly intended to divide the actual lands in question between her children. We have thus embodied there a proceeding which she commenced of her own free will and accord before a tribunal having the jurisdiction to hear and determine that kind of a cause, and she and her children, all adults, *sui juris,* voluntarily submitted themselves and the property to the authority of that tribunal. The testimony discloses that before the commencement of the suit the plaintiff and her children, defendants here, had substantially agreed on a division of all the land, but for some reason best known to the plaintiff she preferred to and did commence the partition suit, in which, as

the documentary evidence here reveals, she herself verified the complaint.

After hearing the parties on their deliberate submission to its jurisdiction, the Circuit Court entered an interlocutory decree defining the rights of the parties as the plaintiff had alleged them. On her motion it proceeded to actual partition and final decree. The sanction to be given to such a decree is thus defined in Section 756, L. O. L.:

"The effect of a judgment, decree, or final order in an action, suit or proceeding before a court or judge thereof of this state or of the United States, having jurisdiction to pronounce the same, is as follows: (1) In case of a judgment, decree or order against a specific thing, or in respect to the probate of a will or the administration of the estate of a deceased person, or in respect to the personal, political or legal condition or relation of a particular person, the judgment, decree or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person; (2) in other cases, the judgment, decree, or order is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action, suit, or proceeding, litigating for the same thing, under the same title and in the same capacity."

In this connection we advert to Chapter 6, Title VI, L. O. L., relating to partition. It is there said in Section 436:

"The interest of all persons in the property, whether such persons be known or unknown, shall be set forth in the complaint, specifically and particularly, as far as known to the plaintiff. * * "

It is prescribed in Section 440:

"The defendant shall set forth in his answer the nature and extent of his interest in the property. * * "

Again, in Section 441, the statute declares:

"The rights of the several parties, plaintiffs as well as defendants, may be put in issue, tried, and determined in such suit, and where a defendant fails to answer, or where a sale of the property is necessary, the title shall be ascertained by proof to the satisfaction of the court before the decree for partition or sale is given."

Still further it is laid down in Section 444:

"The court may confirm or set aside the report in whole or in part, and if necessary appoint new referees. Upon the report being confirmed, a decree shall be given that such partition be effectual forever, which decree shall be binding and conclusive: (1) On all parties named therein and their legal representatives, who have at the time any interest in the property divided, or any part thereof, as owners in fee, or as tenants for life or for years, or as entitled to the reversion, remainder, or inheritance of such property or any part thereof after the termination of a particular estate therein, or who by any contingency may be entitled to a beneficial interest in the property, or who have an interest in any undivided share thereof as tenants for years or for life. * * "

Finally, Section 445 reads as follows:

"But such decree and partition shall not affect tenants for years or for life of the whole of the property which is the subject of partition; nor shall such decree and partition preclude any person, except such as are specified in the last section, from claiming title to the property in question, or from controverting the title of the parties between whom the partition shall have been made."

3, 4. It thus appears that under our statute a court of equity in partition suits has jurisdiction to adjudicate, not merely possession, but also title to real property. Under the provisions of our law where partition cannot be made, the court may direct an alienation of the whole title and divide the proceeds thereof. The terms of our code distinguish the precedents cited by the plaintiff to the effect that a party to a partition suit is not estopped to question the title of any other participant in such a proceeding because partition has to do only with possession. Such was the rule at common law where the only unity of tenants in common was that of possession. Our statute, however, has changed the common-law canon on that subject. The principle is thus laid down in 30 Cyc., page 310:

"The truth is that a judgment in partition is as conclusive as any other. It does not create nor manufacture a title, nor divest the title of anyone not actually or constructively a party to the suit; but it operates by way of estoppel. It prevents any of the parties from relitigating any of the issues presented for decision, and the decision of which necessarily entered into the judgment; and it divests all title held by any of the parties at the institution of the suit."

In this connection the plaintiff argues that, because the defendants in the partition suit did not dispute her allegations of title, there was no issue, and hence she is not bound by the decree therein; but this is beside the mark. The fact that there was no dispute strengthens, rather than weakens, the position of the defendants here. In a sense, by her own voluntary act, without any fault, fraud, or mistake on the part of her children and without any mistake of fact on her part, but only an error of law as disclosed by her complaint here, the plaintiff entered into what may be

termed, in the words of Blackstone, "a contract of record," with the defendants here, whereby she disposed of the title to the property involved. It was clearly in the nature of a family settlement which should be respected in spite of the fact that since then she has contracted another alliance. It cannot be admitted as a principle that the plaintiff, having voluntarily secured an adjudication of a competent tribunal fixing the status of real property, can afterward overturn it merely because she did not understand her rights, unless the misunderstanding was mutually shared by the other parties or induced by their fraud or other wrongdoing. A contrary holding would beget instability of titles and destroy the sanction of judicial decrees.

The partition proceedings and the decree therein do not constitute any cloud upon the plaintiff's estate in the lands as adjudicated by that decree.

The determination of the Circuit Court in this case is reversed and the suit dismissed.

REVERSED.     SUIT DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE McBRIDE concur.

———

Denied March 16, 1915.

ON PETITION FOR REHEARING.

(146 Pac. 94.)

Department 1. MR. JUSTICE BURNETT delivered the opinion of the court.

The plaintiff petitions for a rehearing of this cause substantially on the ground that the decree of parti-

tion of which she complains did not affect the title of the plat involved in this suit beyond granting her a life estate therein, whereas she already owned it in fee simple. If it proves anything, the argument of the petition for rehearing proves too much. When reduced to its lowest terms the essence of it is that the plaintiff has set up a man of straw which she would knock down at the expense of the defendants. This estimate of the petition is not at war with the conclusion reached in the former opinion in these words:

"The partition proceedings and the decree therein do not constitute any cloud upon the plaintiff's estate in the lands as adjudicated by that decree."

The effect of our conclusion was to leave intact the determination of the partition suit which the plaintiff herself brought about. We are not called upon to construe that decree or in any wise disturb its provisions. Having voluntarily procured it, the plaintiff must abide by it whatever its effect may be. The petition for rehearing is denied.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Benson concur.